UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| JOSHUA CANIPE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:24-CV-00092-DCLC-CRW |
| EASTMAN CHEMICAL COMPANY, | ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Eastman Chemical Company's Motion for Summary Judgment [Doc. 18], Eastman's Memorandum of Law [Doc. 19], Plaintiff Joshua Canipe's Response in Opposition [Doc. 27], and Eastman's Reply [Doc. 31]. For the reasons herein, the Court will grant in part and deny in part Eastman's motion.

**I. BACKGROUND**

In July 2022, Eastman, a global specialty materials company, hired Mr. Canipe to work as a baling operator, an entry-level position that required him to package acetate tow, a type of fiber, into rectangular cartons or bales for shipment to customers. [Pl.'s Resp. to Statement of Material Facts, Doc. 28, ¶¶ 1–2, 4, 6]. The more specific duties of this position include placing cardboard on the sides of the bale, strapping the bale, using a pneumatic sealer to tighten the straps, operating controls, using a stacker to remove the bale from the baler, and preparing the baler for the next bale. [*Id.* ¶ 7]. The position's physical demands include frequent lifting of up to twenty pounds, repetitive use of the hands to grasp ten to twenty pounds, repetitive pushing and pulling of thirty to forty pounds, and continuous application of ten pounds of pressure with the hands. [*Id.* ¶ 9].

In August 2022, Mr. Canipe, just days into his training on the job, began to experience numbness and tingling in his fingers. [*Id.* ¶ 28]. He was later diagnosed with bilateral carpal tunnel syndrome and required surgery. [*Id.* ¶¶ 34, 42]. He explained his condition to one of his supervisors, Todd Pruett, and under Eastman's short-term disability policy, he took paid leave from August 25, 2022, until his medical provider cleared him to return to work on February 10, 2023. [*Id.* ¶¶ 36, 44–47; Pl.'s Dep., Doc. 29-1, 97:13–21]. Upon returning to work on that date, he realized that he lacked the strength in his hands to perform his duties, [Pl.'s Resp. to Statement of Material Facts ¶ 49], and he reported his lack of strength to Utility Operator Jose Garcia, who referred him to a nurse in Eastman's Medical Department, [*id.* ¶ 50]. Mr. Canipe told the nurse that, because of the loss of strength in his hands, he could not perform his job. [*Id.* ¶ 51]. According to Mr. Canipe, the "fifteen-pound pneumatic tool was what really got [his] hands." [Pl.'s Dep. at 59:14–15]. He revisited his medical provider, who, on February 13, 2023, temporarily restricted him from lifting, pushing, or pulling more than ten pounds in the workplace. [Pl.'s Resp. to Statement of Material Facts ¶ 53; Med. Evaluation Rep., Doc. 20-7, at 1].

After his medical provider restricted his workplace activities to this ten-pound limit, he asked Todd Akard, Eastman's human resources manager, and Kenny Carter, Eastman's team manager associate, "if there was anything else that [he] could do that wasn't quite as strenuous on [his] wrists and hands using that fifteen-pound pneumatic air sealer." [Pl.'s Dep. at 52:22–25]. He requested reassignment to an entry-level position in another department, [*id.* at 53:21–22], but Mr. Akard denied his request because no entry-level jobs met Mr. Canipe's workplace restrictions—i.e., his restrictions from lifting, pushing, or pulling more than ten pounds—at the time, [Akard Decl., Doc. 17, ¶ 17]. Mr. Canipe also asked if he could perform the duties of a tow-feeder

operator—at the exclusion of his duties as a baling operator—until he regained the strength in his hands. [Pl.'s Dep. at 52:25, 55:3–5].

According to Mr. Canipe, a tow-feeder operator "was the same [as] baler operator" and "didn't [require] use [of] that fifteen-pound pneumatic sealer." [*Id.* at 53:3–5]. The duties of a tow-feeder operator, however, include physical demands: the ability to lift up to twenty pounds, [Tow-Feeder Operator Description, Doc. 23-2, at 4; Carter Decl., Doc. 23, ¶ 20], and Mr. Carter informed Mr. Canipe that it is "not a separate, standalone job," [Carter Decl. ¶ 12]. According to Mr. Carter, a tow-feeder operator "is a work station that certain Baling Operators may rotate through, after they have successfully completed their Baling Operator training," [*id.*], and to be eligible to rotate as a tow-feeder operator, a baling operator must have "been in the Baling Operator position for at least three months and must be 'rock stars' as Baling Operators—the best of the best," [*id.* ¶ 13]. Mr. Carter rejected Mr. Canipe's request to work as a tow-feeder operator because "he had not completed a sufficient portion of the Baling Operator training," "had not worked at Eastman for a sufficient length of time," and "was not a top performer in the Baling Operator Role." [*Id.* ¶ 16; Pl.'s Dep. at 53:14–19, 64:2–7].

Mr. Canipe's short-term disability benefits were set to expire on February 22, 2023, [Herron Decl., Doc. 24, ¶ 5], and on or about February 15, 2023, he had discussed long-term disability benefits with Eastman's employee benefits analyst, Shannon Herron, and requested the paperwork for long-term disability. [*Id.* ¶ 4; Pl.'s Dep. at 94:6–25, 95:1–25, 96:1–7; Def.'s Resp. to Statement of Material Facts, Doc. 32, ¶ 75]. She offered him long-term disability. [Def.'s Resp. to Statement of Material Facts, ¶ 29]. Mr. Canipe completed the paperwork and hand-delivered it to his medical provider, [Pl.'s Dep. at 96:5–9], but Eastman terminated his employment on February 23, 2023, the day after his short-term disability benefits had expired, [Herron Decl. ¶¶ 4,

5; Pl.'s Dep. at 99:16–23; Pl.'s Resp. to Statement of Material Facts ¶ 74]. According to Eastman, it terminated Mr. Canipe because he had struggled with the pace of the baling-operator position and with learning the position and mastering its tasks. [Pruett Decl., Doc. 22, ¶¶ 13, 17; Def.'s Mem., Doc. 19, at 16].

Mr. Canipe now brings suit against Eastman in this Court, alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, *as amended by* the Americans with Disabilities Act Amendments Act, Pub. L. No. 110-325, 122 Stat. 3553 (2008). He claims that Eastman, in terminating his employment, discriminated against him because of his disability—i.e., his bilateral carpal tunnel syndrome (Count One), (2) failed to engage in the interactive process, (Count Two), failed to provide him with a reasonable accommodation for his disability (Count Three), and retaliated against him because of his disability (Count Four). [Compl., Doc. 1, at 4–8]. Eastman now moves for summary judgment on each of Mr. Canipe's claims, and Mr. Canipe opposes its motion. Having analyzed the parties' arguments, the Court is now prepared to rule on Eastman's motion.

## II. Legal Standard

Summary judgment is proper when the movant shows, or "point[s] out to the district court," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), that the record—the admissions, affidavits, answers to interrogatories, declarations, depositions, or other materials—is without a genuine issue of material fact and that the movant is entitled to judgment as a matter of law, Fed. R. Civ. P. 56(a), (c). The moving party has the initial burden of identifying the basis for summary judgment and the portions of the record that lack genuine issues of material fact. *Celotex*, 477 U.S. at 323. The movant discharges that burden by showing "an absence of evidence to support the nonmoving party's" claim or defense, *Celotex*, 477 U.S. at 325, at which point the nonmoving party, to survive

summary judgment, must identify facts in the record that create a genuine issue of material fact, *id.* at 324.

Not any factual dispute will defeat a motion for summary judgment—the requirement is "that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the case's outcome under the applicable substantive law, *id.*, and an issue is "genuine" if the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In short, the inquiry is whether the record contains evidence that "presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. When ruling on a motion for summary judgment, a court must view the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### III. ANALYSIS

The ADA consists of a "tripartite structure." *Marble v. Tennessee*, 767 F. App'x 647, 650 (6th Cir. 2019). Title I protects disabled individuals from discrimination in the workplace; Title II protects their access to public services; and Title III protects their access to public accommodations. *Id.* (citing 42 U.S.C. §§ 12112, 12132, 12182). Mr. Canipe brings suit under Title I, [Compl. ¶¶ 27, 37, 48], which prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to . . . discharge of employees," among other prohibitions, 42 U.S.C. § 12112(a). Mr. Canipe can prove discrimination in two ways, either with direct or circumstantial evidence, depending on the type of discriminatory claim at issue. *Blanchet v. Charter Commc'ns, LLC*, 27 F.4th 1221, 1227 (6th Cir. 2022).

### A. Failure to Accommodate

If an employer does "not mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability," that individual may sue the employer for discrimination by bringing a claim known as a failure-to-accommodate claim under the ADA. 42 U.S.C. § 12112(b)(5)(A). "A failure-to-accommodate claim asserts that the defendant 'could have reasonably accommodated [a plaintiff's] disability, but refused to do so.'" *Keller v. Chippewa Cnty., Mich. Bd. of Comm'rs*, 860 F. App'x 381, 385 (6th Cir. 2021) (quoting *McPherson v. Mich. High Sch. Athletic Ass'n*, 119 F.3d 453, 460 (6th Cir. 1997)). A failure-to-accommodate claim "necessarily involve[s] direct evidence (the failure to accommodate) of discrimination." *Kleiber v. Honda Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007). The term "direct evidence" means "evidence which, if believed, requires no inferences to conclude that unlawful [discrimination] was a motivating factor in the employer's action." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 544 (6th Cir. 2008) (citations omitted).

The familiar *McDonnell-Douglas* framework[1] and its shifting burdens do not apply to a claim involving direct evidence like a failure-to-accommodate claim. *Kleiber*, 485 F.3d at 868–69. Instead, the following framework applies to a failure-to-accommodate claim:

> (1) The plaintiff bears the burden of establishing that he or she is disabled. (2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed reasonable accommodation. (3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.

---

[1] Courts also refer to this framework as the "*McDonnell Douglas-Burdine*" framework because in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981), the Supreme Court clarified its holding in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572–73 (6th Cir. 2000).

*Id.* at 869 (citation omitted). Eastman does not contest that Mr. Canipe was disabled, so Mr. Canipe satisfies his burden under part 1 of the framework. Under part 2 of the framework, the parties dispute whether Eastman could have reasonably accommodated Mr. Canipe's disability but refused to do so. Mr. Canipe argues that Eastman failed to reasonably accommodate his disability because (1) it did not reassign him to another position and (2) did not provide him with long-term disability benefits. [Pl.'s Resp. to Mot. for Summ. J., Doc. 27, at 12–15]. Both arguments fall under part 2(c) of the framework. *See Kleiber*, 485 F.3d at 869 ("[T]he parties' dispute centers on whether [the defendant] could reasonably accommodate [the plaintiff's] disability by transferring him to a different job—part (2)(c) of the above framework."); *see also Blanchet*, 27 F.4th at 1229 ("When an employee's proposed accommodation is medical leave . . . [w]e must . . . determine whether [the plaintiff] would be 'otherwise qualified' to perform her essential job functions with her proposed accommodation, in other words, when she returned to work" after medical leave. (citation omitted)).

Mr. Canipe carries the burden of proving that his proposed accommodations—reassignment and long-term disability—are objectively reasonable. *Kleiber*, 485 F.3d at 870. The ADA defines "reasonable accommodation" by example, 42 U.S.C. § 12111(9)(B), and the burden of establishing that a reasonable accommodation is possible is not heavy. *Cehrs v. Ne. Ohio Alzheimer's Rsch. Ctr.*, 155 F.3d 775, 781 (6th Cir. 1998). So long as Mr. Canipe "merely 'suggest[s] the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits,'" he has met his burden, *id.* (quotation omitted). If he meets this burden, the burden then shifts to Eastman, which must show that the accommodation is unreasonable and imposes an undue hardship on it. *Id.*

1. <u>Failure to Reassign Mr. Canipe to a Vacant or Different Position</u>

Mr. Canipe sought reassignment to a vacant position or to a different position as a reasonable accommodation for his disability. Under the ADA, a reasonable accommodation includes "reassignment to a vacant position." 42 U.S.C. § 12111(9)(B); *see Kleiber*, 485 F.3d at 870 n.3 ("[I]t is permissible for an employee to request a transfer to another job (itself an accommodation)[.]" (citation omitted)). Mr. Canipe, however, is not entitled to reassignment to a vacant position or a different position unless he is qualified for the position. *See* 42 U.S.C. § 12111(8) (stating that an employee is qualified for a position that he "holds or desires" only if he "can perform the essential functions of th[at] employment position"). So to withstand summary judgment, he must create a genuine issue of material fact by pointing to evidence that he was qualified for the vacant position or different position that he sought as a reasonable accommodation, though he must first show that Eastman had a vacant or different position available. *Kleiber*, 485 F.3d at 869–70.

### a. *Vacant Entry-Level Position*

Eastman claims that, at the time of its alleged disability-based discrimination against Mr. Canipe, it had available no entry-level position that met his workplace restrictions. [Akard Decl. ¶ 17]. But Mr. Canipe, during his deposition, stated that he was aware of a vacant entry-level position as a polymers operator. [Pl.'s Dep. at 58:10–25, 59:1–10]. He therefore meets his burden of showing the existence of a genuine issue of material fact as to whether an entry-level position was available at the time.

### b. *Mr. Canipe's Qualifications: Reassignment*

Although Eastman "ha[d] a duty under the ADA to consider transferring" Mr. Canipe "to a new position within the [c]ompany for which [he] is *otherwise qualified*," *Burns v. Coca-Cola Enters.*, Inc., 222 F.3d 247, 257 (6th Cir. 2000) (emphasis added), the record establishes—beyond

a genuine issue of material fact—that Mr. Canipe was unqualified for the position of polymers operator, or for that matter, for the position of tow-feeder operator. *See Kleiber*, 485 F.3d at 870 ("[T]o overcome summary judgment, the plaintiff generally must identify the specific job he seeks and demonstrate that he is qualified for that position." (citation omitted)). The uncontroverted record establishes that the positions of polymers operator and tow-feeder operator require lifting, pushing, or pulling more than ten pounds. [Tow-Feeder Operator Description at 4; Akard Decl. ¶¶ 16–17; Carter Decl. ¶ 20]. And, in fact, the uncontroverted record establishes that *all* of Eastman's entry-level positions require lifting, pushing, or pulling more than ten pounds. [Akard Decl. ¶ 18].

Because Mr. Canipe's limitations prevented him from lifting, pushing, or pulling in excess of ten pounds, [Pl.'s Resp. to Statement of Material Facts ¶ 53; Med. Evaluation Rep. at 1], no reasonable jury could find that he was qualified to work as a polymers operator or tow-feeder operator, or for any entry-level position at Eastman. *See Kleiber*, 485 F.3d at 870 (holding that evidence of the plaintiff's medical "limitations rendered him unqualified" for reassignment to the positions he sought as reasonable accommodations for his disability, despite his assertions that he "could have performed" them); *see also Thomas v. E.I. Dupont deNemours*, 70 F. App'x 332, 336 (6th Cir. 2000) ("[A] proposed accommodation through reassignment is not 'reasonable' unless the employee can perform the essential functions of the target position[.]"). Mr. Canipe therefore fails to meet his initial burden of showing that he is otherwise qualified for an entry-level position at Eastman.

### 2. Failure to Provide Mr. Canipe with Long-Term Disability

Mr. Canipe also contends that his request for long-term disability is another proposed reasonable accommodation, [Pl.'s Resp. to Mot. for Summ. J. at 13], and he is correct—long-term disability can indeed constitute a reasonable accommodation, *see Cehrs*, 155 F.3d at 781 ("Medical

leave as an accommodation is not a novel concept." (citations omitted)); *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 394 (6th Cir. 2017) ("This court has previously held that medical leave can constitute a reasonable accommodation under the ADA." (citation omitted)). When an employee's requested accommodation is medical leave, he must show that he would be otherwise qualified to perform his job's essential functions when he returned to work. *Blanchet*, 27 F.4th at 1229. An employee's request for medical leave, though, is not objectively reasonable if he "[1] has already received significant amounts of leave *and* [2] has demonstrated 'no clear prospects for recovery.'" *Id.* (emphasis added) (quotation omitted).

Although Mr. Canipe remained on short-term disability leave for roughly six months, Eastman had, nonetheless, offered him long-term disability when he requested the paperwork for long-term disability, [Herron Decl. ¶ 4; Pl.'s Dep. at 94:6–25, 95:1–25, 96:1–7; Def.'s Resp. to Statement of Material Facts ¶ 29], creating the reasonable inference that Eastman believed long-term disability would remedy his condition, *see Blanchet*, 27 F.4th at 1230 ("A reasonable jury could find that [the employee's] proposed accommodation was reasonable from the fact that [the employer] considered it reasonable."). In addition, his medical provider stated that his limitations were temporary, [Med. Evaluation Rep., Doc. 20-7, at 1; Pl.'s Dep. at 127:2–5], and consistent with his medical provider's prognosis, he regained his strength in his hands in March or April 2023, only a month or two after Eastman terminated him, [Pl.'s Dep. at 127:7–23]. A reasonable jury could therefore conclude that he had clear prospects for recovery and would have been otherwise qualified to perform his job's essential functions after receiving long-term disability as an accommodation from Eastman. Because a jury could come to this conclusion, a genuine issue

of material fact exists as to whether he was otherwise qualified for his position, and ultimately as to whether Eastman failed to provide him with a reasonable accommodation.[2]

### B. Failure to Participate in the Interactive Process

As an offshoot of Mr. Canipe's failure-to-accommodate claim, Mr. Canipe's claim for failure to engage in the interactive process—the process by which both parties must confer in good faith and "identify the precise limitations resulting from the disability and potential reasonable accommodations," 29 C.F.R. § 1630.2(o)(3)—depends on whether his failure-to-accommodate claim is viable, *see Thompson v. Fresh Prods., LLC*, 985 F.3d 509, 525 (6th Cir. 2021) ("In this circuit, failure to engage in the interactive process does not give rise to an independent claim. Instead, it is a violation of the ADA only if the plaintiff establishes a prima facie case of failure to accommodate." (citations omitted)).

In moving for summary judgment on Mr. Canipe's claim for failure to engage in the interactive process, Eastman's lone contention is that Mr. Canipe, as a matter of law, cannot bring this claim as a standalone claim. [Def.'s Mem., Doc. 19, at 9]. This contention is true, but again, when an employee establishes a prima facie case for failure to accommodate, then the employer's failure to engage in the interactive process can violate the ADA. *Thompson*, 985 F.3d at 525. Because Mr. Canipe has met his burden of establishing a prima facie case of failure to

---

[2] Eastman argues that Mr. Canipe did not plead that he requested long-term disability as a reasonable accommodation and that the Court should therefore not permit him to move forward with his failure-to-accommodate claim. [Def.'s Reply, Doc. 31, at 4]. Although facts "not alleged in the . . . complaint" are "not properly before the" Court on summary judgment, *Ogletree v. McNamara*, 449 F.2d 93, 99 (6th Cir. 1971), Mr. Canipe did allege that Eastman "asked [him] to have his doctor fill out paperwork related to his disability, which he did," that he "returned the paperwork to Defendant on February 23, 2023," and that "[r]ather than attempt to accommodate him, [Eastman] elected to terminate [him]." [Compl., Doc. 1, ¶¶ 23–25]. Mr. Canipe then incorporated these allegations by reference into his claim of failure to accommodate. [*Id.* ¶ 47]. These allegations should have alerted Eastman that long-term disability was at issue in Mr. Canipe's failure-to-accommodate claim, especially in light of the Sixth Circuit's recognition that "[m]edical leave as an accommodation is not a novel concept." *Cehrs*, 155 F.3d at 781 (citations omitted). In addition, Mr. Canipe, during his deposition, stated that Eastman's termination of his employment was discriminatory because it did not "give[] [him] a fair amount of time to complete [his] long term disability forms." [Pl.'s Dep. at 100:10–11].

accommodate—specifically as it relates to his request for long-term disability—Eastman's contention that he cannot pursue a claim for failure to participate in the interactive process is a nonstarter and does not entitle it to summary judgment.

### C. Disability Discrimination

Under the ADA, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . discharge of employees." 42 U.S.C. § 12112(a). Mr. Canipe claims that Eastman terminated him because of his disability. [Compl. at 4–5]. When analyzing claims of disability discrimination under the ADA, the Court applies the *McDonnell-Douglas* framework to claims involving circumstantial evidence of discrimination. *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 703 (6th Cir. 2008). A case involving direct evidence is "rare," *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998), and "generally consists of cases where the employer makes admissions of a discriminatory or retaliatory motive," *Mikols v. Reed City Power Line Supply Co.*, No. 1:07-CV-84, 2008 WL 2696915, at *4 (W.D. Mich. July 1, 2008) (citing *Imwalle*, 515 F.3d at 544). The Court finds no admission of this type in the record, and it therefore will apply the *McDonnell-Douglas* framework to Mr. Canipe's claim of discrimination.[3]

1. <u>Prima Facie Showing</u>

Under this framework, Mr. Canipe shoulders the initial burden of making a prima facie showing of discrimination. *Williams*, 847 F.3d at 395. To make a prima facie showing, he must establish that (1) he has a disability, (2) he is otherwise qualified for the job with or without reasonable accommodation, (3) he suffered an adverse employment action, (4) Eastman knew or had reason to know of his disability, and (5) his position remained open, or he was replaced.

---

[3] At the summary-judgment stage, sufficient evidence must exist to create a genuine factual dispute at each stage of the *McDonnell-Douglas* inquiry. *Cline v. Cath. Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000).

*Hrdlicka v. Gen. Motors, LLC*, 63 F.4th 555, 566–67 (6th Cir. 2023) (quoting *id.*). Eastman challenges only Mr. Canipe's ability to make a prima facie showing under the second element—that he is otherwise qualified for his position. [Def.'s Mem. at 16]. The Court has already ruled that Mr. Canipe has failed to make a prima facie showing that he is otherwise qualified for an entry-level position at Eastman but *has* made a prima facie showing that he would have been otherwise qualified to perform his job's essential functions after receiving long-term disability. *See supra* Section III(A)(1)–(2). He has therefore met his burden of establishing a prima facie showing of discrimination, specifically as it relates to his request for long-term disability.

### 2. Legitimate, Non-Discriminatory Reason

In the next stage of the *McDonnell-Douglas* test, Eastman must produce a legitimate, non-discriminatory reason for Mr. Canipe's termination. *Hrdlicka*, 643 F.4th at 568. Eastman satisfies its burden by contending that it terminated him because "he could not perform the essential functions of the Baling Operator job, and a reasonable accommodation was not available." [Pruett Decl. ¶¶ 13, 17; Def.'s Mem. at 16]; *see Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 546 (6th Cir. 2008) ("Poor performance is a legitimate, nondiscriminatory reason for terminating a person's employment[.]").

### 3. Pretext

Because Eastman has proffered legitimate, non-discriminatory reasons for Mr. Canipe's termination, Mr. Canipe now has the burden of proving that its proffered reasons are pretextual. *Hrdlicka*, 63 F.4th at 569. To establish pretext, he must cite evidence that Eastman's proffered reasons (1) have no basis in fact, (2) did not actually motivate Eastman's decision to terminate him, or (3) were insufficient to warrant his termination. *Id.* Mr. Canipe identifies sufficient evidence to create a genuine issue of material fact as to whether Eastman's proffered reasons—

i.e., that his performance was poor and that a reasonable accommodation was unavailable—were the actual reasons for its decision to terminate him.

As to Eastman's first proffered reason—Mr. Canipe's supposed poor performance—Mr. Canipe attests, in a sworn declaration, that he "never received any criticism of either the pace or quality of [his] work" during his employment with Eastman. [Canipe Decl., Doc. 30-1, ¶ 6]. So while Eastman says Mr. Canipe's performance was inadequate, Mr. Canipe says Eastman never formally or informally critiqued his performance. Based on this factual dispute over whether his performance was adequate, a reasonable jury could conclude that Eastman's proffered reason for Mr. Canipe's termination—poor performance—is pretextual.

As to Eastman's second proffered reason—the supposed unavailability of a reasonable accommodation—Eastman concedes that it provides long-term disability, which again, is a reasonable accommodation, *Williams*, 847 F.3d at 394, to employees who cannot work, [Def.'s Resp. to Statement of Material Facts ¶ 25], and it concedes that it offered long-term disability to Mr. Canipe, [Def.'s Resp. to Statement of Material Facts ¶ 29], only to terminate him while his paperwork was pending. Based on both concessions, a reasonable jury could find that Eastman's proffered reason for Mr. Canipe's termination—the unavailability of a reasonable accommodation—is pretextual. Mr. Canipe therefore meets his burden of showing that Eastman's proffered reasons for terminating him are a pretext for disability discrimination, and Eastman is not entitled to summary judgment on his claim of disability discrimination.

**D. Retaliation**

Besides prohibiting discrimination because of a disability, the ADA prohibits retaliation against "any individual" who opposes a discriminatory act. 42 U.S.C. § 12203(a). Mr. Canipe maintains that Eastman terminated him in retaliation for requesting a reasonable accommodation.

[Compl. at 7]. The Court evaluates claims of retaliation under the *McDonnell-Douglas* framework if those claims involve circumstantial evidence of discrimination. *Rorer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014). The Court finds no direct evidence of retaliation in the record, and it will therefore apply the *McDonnell-Douglas* framework to Mr. Canipe's claim of retaliation.

Under this framework, Mr. Canipe carries the initial burden of making a prima facie showing of discrimination. *Id.* To make a prima facie showing, he must establish that (1) he engaged in activity protected under the ADA; (2) Eastman knew of that activity; (3) Eastman took an adverse action against him, and (4) a causal connection exists between the protected activity and the adverse action. *Rorer*, 743 F.3d at 1046. Eastman contests only Mr. Canipe's ability to make a prima facie showing under the last element—but-for causation. [Def.'s Mem. at 17–18]. His "burden to show causation entails 'requiring [him] to put forth some evidence to deduce a causal connection between the retaliatory action and the protected activity and requiring the court to draw reasonable inferences from that evidence, providing it is credible.'" *Pettit v. Steppingstone, Ctr. for the Potentially Gifted*, 429 F. App'x 524, 530, 531 (6th Cir. 2011) (quoting *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997)).

In attempting to establish causation, Mr. Canipe cites the "close temporal proximity" between his "seeking leave" and Eastman's termination of his employment, [Def.'s Resp. at 18], and in doing so, he makes the requisite causal connection between the protected activity at issue—his request for long-term disability—and his termination. Again, the Court has already determined that long-term disability can constitute a reasonable accommodation and that Mr. Canipe's request for it was objectively reasonable. *See supra* Section III(A)(2). His request was therefore a protected activity under the ADA. *See A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 698 (6th Cir. 2013) ("[T]his circuit and most others agree that requests for accommodation are protected

acts." (citations omitted)); *Baker v. Windsor Republic Doors*, 414 F. App'x 764, 777 n.8 (6th Cir. 2011) ("[A] protected act is the showing of a good-faith request for reasonable accommodations." (citation omitted)).

When an employer learns of a protected activity and terminates an employee "very close in time" afterward, "such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation," *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008), and here in Mr. Canipe's case, the record suffices to create a genuine issue of material fact as to precisely this type of acute temporal proximity. On or about February 15, 2023, he requested long-term disability, [Herron Decl. ¶ 4; Pl.'s Dep. at 94:6–25, 95:1–25, 96:1–7; Def.'s Resp. to Statement of Material Facts, Doc. 32, ¶ 75], and Eastman terminated him just eight days later, [Herron Decl. ¶¶ 4, 5; Pl.'s Dep. at 99:16–23; Pl.'s Resp. to Statement of Material Facts ¶ 74]. The eight-day span between his request for long-term disability and his termination would permit a reasonable jury to find that a causal connection exists between these two events. *See DiCarlo v. Potter*, 358 F.3d 408, 415–16 (6th Cir. 2004) ("[T]his Circuit has embraced the premise that in certain distinct cases where the temporary proximity between the protected activity and the adverse employment action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise." (citations omitted)), *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009); *see also McNett v. Hardin Cmty. Fed. Credit Union*, 118 F. App'x 960, 965 (6th Cir. 2004) (concluding that the requisite causal nexus existed when "only 13 days" separated the protected activity from the adverse action); *Shefferly v. Health All. Plan of Mich.*, 94 F. App'x 275, 285 (6th Cir. 2004) (determining that "the passage of less than three weeks between [the employer's] receipt of the charges and the adverse actions gives rise to an inference of

discrimination" and "[t]herefore, in this case, [the plaintiff] has established a prima facie case of retaliation").

Although Eastman argues that "as with [Mr. Canipe's] discrimination claim, even if [Mr. Canipe] could establish a *prima facie* case of retaliation" Eastman is still entitled to summary judgment because he "cannot establish pretext," [Def.'s Mem. at 18], its argument fails for the reasons that the Court has already articulated, *see supra* Section III(C)(3); *see also Barlia v. MWI Veterinary Supply, Inc.*, No. 15-10243, 2017 WL 345644, at *13 (E.D. Mich. Jan. 24, 2017) ("[T]he remaining analysis of [Plaintiff's] retaliation claim would proceed along precisely the same lines as the Court's earlier assessment of Plaintiff's claim of disability discrimination."). Eastman is therefore not entitled to summary judgment on Mr. Canipe's claim of retaliation.

## IV. CONCLUSION

Eastman's motion is **GRANTED** as to Count Three but *only* to the extent Mr. Canipe claims that Eastman failed to provide him with a reasonable accommodation by not reassigning him to a different position. Accordingly, Mr. Canipe's claim that Eastman did not provide him with a reasonable accommodation by not reassigning him to a different position is **DISMISSED**. Eastman's motion is **DENIED** in all other respects. The trial date remains set for **November 18, 2025, at 9:00 a.m.**

SO ORDERED:

s/ Clifton L. Corker
United States District Judge
